THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TRENNIS D. JONES, Defendant-Appellant.

Third District   No. 3—99—0919

Opinion filed May 11, 2001.

Santiago A. Durango, of State Appellate Defender's Office, of Ottawa, for appellant.

Jeff Tomczak, State's Attorney, of Joliet (John X. Breslin and Nancy Rink Carter, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE HOMER delivered the opinion of the court:

The defendant, Trennis D. Jones, was convicted of unlawful possession of a look-alike substance with intent to distribute on public housing property (720 ILCS 570/404(b), 407(b)(3) (West 1998)). The substance was found in his pocket during a search incident to an arrest for trespassing on state-supported land (720 ILCS 5/21—5(a) (West 1998)). In this appeal, he claims that: (1) his trial counsel was ineffective for not challenging his arrest on probable cause grounds, (2) his conviction should be reduced to simple possession, and (3) the statute under which he was sentenced is unconstitutional. We affirm.

## BACKGROUND

At the defendant's bench trial, police officer Robert Badertscher testified that he was working in Joliet on May 12, 1999. At approximately 11:30 p.m., he heard four or five gunshots fired from a housing project known as the McKay Street Housing Authority. He was 1 to 1½ blocks away and immediately proceeded to the area. The entrance to the project was marked with "no trespassing" signs indicating that persons without a pass were subject to arrest. Badertscher entered and saw a group of 10 males, including the defendant, standing in a street. He said, "stop, police," but the subjects scattered. The defendant initially walked away but then stopped on a sidewalk.

Badertscher asked the defendant if he lived on the premises, and the defendant said "no." During his testimony, Badertscher mentioned later asking the defendant if he had a pass. However, Badertscher's police report showed that he asked the defendant about his residence and about a pass at the same time. Defense counsel read that portion of the report on cross-examination, and Badertscher acknowledged that the questions "came together." The defendant's response to the compound inquiry was "no."

Badertscher described his subsequent actions toward the defendant as follows:

"At that time we had several other subjects running [and] I

made a decision in my mind that he was under arrest for trespassing on state-supported land. [In a] search incident to arrest I started to pat him down and searched his pockets, and in his right front pants pocket I retrieved three large clear plastic bags. In each bag there was several smaller clear plastic bags with a white rocklike substance inside of them."

Badertscher later inventoried the evidence with David Stoddard, a police evidence technician. The small bags were individually wrapped packages containing a white rocklike substance. Two of the large bags contained 17 small bags each, and the remaining large bag contained 24 small bags.

Officer Stoddard testified and confirmed these numbers. He also said he tested the contents of approximately six small bags from each large bag and did not detect a controlled substance. The aggregate weight of the bags was 16.5 grams.

Raymond Micou, a manager for the Joliet Housing Authority, testified that the defendant was arrested on property belonging to the authority.

Police officer David Jackson testified that he was an undercover investigator on the Metropolitan Area Narcotics Squad. He had participated in 100 to 200 seizures of controlled substances and personally made approximately 50 "controlled buys" of such substances. His job duties included daily interaction with confidential drug informants, and 90% to 95% of his work involved dealing with cocaine.

Jackson was familiar with the housing project on McKay Street and testified that it was known for high drug and gang activity. He said the substance seized from the defendant was consistent with the appearance of cocaine. He also said the packaging of the substance was indicative of intent to distribute and that the defendant did not likely possess it for personal use.

Leslie Stegel, the defendant's mother, testified that she lived in the housing project on McKay Street. She said the defendant lived with her, although his name was not on her lease.

The judge found the defendant guilty of possessing a look-alike substance with intent to distribute on public housing property. The offense was a Class 2 felony. See 720 ILCS 570/404(b), 407(b)(3) (West 1998). However, the defendant met the criteria of section 5—5—3(c)(8) of the Unified Code of Corrections (the Code) (730 ILCS 5/1—1—1 et seq. (West 1998)), which provides for mandatory Class X sentencing. The judge thus sentenced him to 11 years in prison as a Class X felon. The defendant filed a motion to reduce his sentence, which was denied. He then filed this appeal.

## ANALYSIS

### I. Ineffective Assistance of Counsel

■ The defendant first claims that his trial counsel was ineffective for not challenging his arrest on probable cause grounds. To prevail on this claim, he must show that (1) his counsel's representation fell below an objective standard of reasonableness, and (2) he was prejudiced by the deficient representation. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068 (1984); *People v. Albanese*, 104 Ill. 2d 504, 526, 473 N.E.2d 1246, 1255 (1984). The prejudice component of this standard requires proof of a reasonable likelihood that a motion to quash the defendant's arrest would have been granted if his counsel had filed one. *People v. Robinson*, 167 Ill. 2d 397, 405, 657 N.E.2d 1020, 1025 (1995).

■ ■ An arrest is supported by probable cause if facts exist that would lead a reasonable person, standing in the arresting officer's shoes, to conclude that a crime has been committed and the defendant was the person who committed it. *Robinson*, 167 Ill. 2d at 405, 657 N.E.2d at 1025. In the instant case, the defendant was arrested for trespassing on state-supported land. This crime occurs when someone (1) enters upon state-supported land, (2) after receiving notice that such entry is forbidden, and (3) thereby interferes with another person's lawful use and enjoyment of the land. 720 ILCS 5/21—5(a) (West 1998). The notice requirement is satisfied if the entrance to the land is posted with signs prohibiting unauthorized entry. 720 ILCS 5/21—5(b) (West 1998).

■ In light of these principles, we conclude that the defendant has not established the prejudice required to sustain his ineffectiveness claim. Officer Badertscher testified that he encountered the defendant on public housing property at approximately 11:30 p.m. while investigating several gunshots. He initially saw the defendant standing with a group of persons who scattered when he identified himself and told them to stop. The entrance to the property was marked with "no trespassing" signs indicating that persons without a pass were subject to arrest. The gunshots obviously interfered with the residents' use and enjoyment of the property. Badertscher asked the defendant if he lived on the premises and had a pass, and the defendant said "no."

These circumstances support a finding of probable cause to believe the defendant was trespassing on state-supported land. Accordingly, there is no reasonable likelihood that a motion to quash his arrest for a lack of probable cause would have been granted. His counsel's decision against filing such a motion did not constitute ineffective assistance.

## II. Reduction of Conviction

The defendant next claims that his conviction should be reduced from possession with intent to deliver to simple possession. He supports this claim by asserting that he only possessed a small quantity of the look-alike substance and that there was no indicia of drug selling.

Although a reviewing court may "reduce the degree of the offense of which the appellant was convicted" (134 Ill. 2d R. 615(b)(3)), a court should only exercise this power when it finds an evidentiary weakness that causes grave concern about the reliability of the guilty verdict. See *People v. Jones*, 286 Ill. App. 3d 777, 783, 676 N.E.2d 1335, 1339-40 (1997). Intent to deliver drugs is necessarily proven by circumstantial evidence (*People v. Morgan*, 301 Ill. App. 3d 1026, 1030, 704 N.E.2d 928, 931 (1998)), and the inference of such intent may be enhanced by the combination of drugs and the manner in which they are packaged (*Robinson*, 167 Ill. 2d at 408, 657 N.E.2d at 1027). In appropriate circumstances, the packaging alone may be sufficient evidence of intent to deliver. *Morgan*, 301 Ill. App. 3d at 1030, 704 N.E.2d at 931.

■ The defendant was arrested in an area known for high drug activity. The evidence seized from him consisted of 58 small bags containing a white rocklike substance. These bags were packaged within three larger bags. Two of the large bags each contained 17 of the small bags. The remaining large bag contained 24 small bags. David Jackson, an undercover narcotics officer, testified that this manner of packaging was indicative of intent to distribute. Based on his experience, he believed the defendant did not likely possess the substance for personal use.

In light of this evidence, we are not convinced that a reduction of the defendant's conviction to simple possession is warranted.

## III. Constitutionality of Sentencing Statute

■ Finally, the defendant claims that the statute under which he was sentenced as a Class X felon is unconstitutional. The statute, section 5—5—3(c)(8) of the Code, reads:

"When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted of any Class 2 or greater Class felonies in Illinois, and such charges are separately brought and tried and arise out of different series of acts, such defendant shall be sentenced as a Class X offender. This paragraph shall not apply unless (1) the first felony was committed after the effective date of this amendatory Act of 1977; and (2) the second felony was committed after conviction on the first; and (3) the third felony was committed after conviction on the second." 730 ILCS 5/5—5—3(c)(8) (West 1998).

The defendant bases his constitutional challenge on the holding in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). In *Apprendi*, the Supreme Court reviewed a New Jersey statute that provided for an extended prison term when the trial judge found, by a preponderance of the evidence, that the defendant acted with a purpose to intimidate because of, *inter alia*, racial bias. Apprendi argued that due process required the prosecution to allege the statutory enhancement factor in its indictment and prove the factor beyond a reasonable doubt. The Court agreed, holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63. The Court's holding left an exception for recidivist legislation, which had previously been found constitutional in *Almendarez-Torres v. United States*, 523 U.S. 224, 140 L. Ed. 2d 350, 118 S. Ct. 1219 (1998).

In discussing the *Almendarez-Torres* exception, the Court explained that prior convictions are acceptable sentencing enhancement factors because they "[were] entered pursuant to proceedings with substantial procedural safeguards of their own." *Apprendi*, 530 U.S. at 488, 147 L. Ed. 2d at 453, 120 S. Ct. at 2361. The Court also noted that Almendarez-Torres admitted the prior convictions upon which his sentence was enhanced. In light of these facts, the Court stated:

> "Both the certainty that procedural safeguards attached to any 'fact' of prior conviction, and the reality that Almendarez-Torres did not challenge the accuracy of that 'fact' in his case, mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a 'fact' increasing punishment beyond the maximum of the statutory range." *Apprendi*, 530 U.S. at 488, 147 L. Ed. 2d at 454, 120 S. Ct. at 2362.

The Court further distinguished *Almendarez-Torres* by stating: "Whereas recidivism 'does not relate to the commission of the offense' itself, [citation], New Jersey's biased purpose inquiry goes precisely to what happened in the 'commission of the offense.'" *Apprendi*, 530 U.S. at 496, 147 L. Ed. 2d at 458, 120 S. Ct. at 2366.

According to the defendant, section 5—5—3(c)(8) violates the holding in *Apprendi* because it provides for a sentencing enhancement without requiring its triggering factors to be alleged in an indictment and proven beyond a reasonable doubt. Although section 5—5—3(c)(8) is a recidivist statute, the defendant asserts that his claim has merit because *Almendarez-Torres* was only "lukewarmly discussed" in *Apprendi*. We are unpersuaded by this argument. See *United States v.*

*Powell*, 109 F. Supp. 2d 381 (E.D. Pa. 2000) (noting that *Almendarez-Torres* is the law until the Supreme Court overrules it).

We conclude that section 5—5—3(c)(8) does not violate the holding in *Apprendi*. The defendant's prior convictions are reliable sentencing enhancement factors because they were entered in proceedings where he received due process protections. Additionally, the record shows that he admitted his prior convictions and that the convictions did not relate to the instant offense. Each of the circumstances the Supreme Court recognized in *Apprendi* as justifying a recidivism exception exists in this case. Such circumstances "mitigate constitutional concerns regarding [the] defendant's due process rights and jury trial guarantees." *People v. Lathon*, 317 Ill. App. 3d 573, 587, 740 N.E.2d 377, 386 (2000), *appeal denied*, No. 90628 (January 29, 2001). Accordingly, his sentence under section 5—5—3(c)(8) did not abrogate those rights. *People v. Dixon*, 319 Ill. App. 3d 881 (2001); *People v. Givens*, 319 Ill. App. 3d 910 (2001); *Lathon*, 317 Ill. App. 3d 573, 740 N.E.2d 377.

Alternatively, the defendant contends that two of the triggering factors in section 5—5—3(c)(8) (the sequence of the prior offenses and the subject's age) are nonrecidivist in nature. In *Dixon*, this court rejected a similar attempt to bring the statute under the holding in *Apprendi*. The Appellate Court, Fourth District, did likewise in *Givens*. The operative subject matter of section 5—5—3(c)(8) is recidivism. In our view, the ancillary components of the statute are sufficiently intertwined with recidivism, and sufficiently distinct from the elements of the instant offense, to fall under the exception recognized in *Apprendi*. We note that the statute upheld in *Almendarez-Torres* contained a sequence element (entering the United States where deportation has occurred after conviction for an aggravated felony). 8 U.S.C. §§ 1326(a), (b)(2) (1988). That element is ancillary to the mere fact of a prior conviction, yet it did not trouble the Supreme Court in *Almendarez-Torres* or *Apprendi*.

The defendant further claims that we should invalidate section 5—5—3(c)(8) under the Illinois Constitution. Aside from his *Apprendi*-based arguments, he offers no reason why we should construe our constitution more strictly than the federal constitution on this matter. We see no reason to do so.

Finally, the defendant claims that, aside from *Apprendi*, due process requires a sentencing judge to find the triggering factors of section 5—5—3(c)(8) by a heightened standard. He seems to propose the "clear-and-convincing" standard.

Similar claims were rejected in *Givens* and *Lathon*. Both courts found support for their holdings in *People v. Williams*, 149 Ill. 2d 467,

599 N.E.2d 913 (1992), where our supreme court held that eligibility for Class X sentencing does not have to be proven beyond a reasonable doubt. The defendant errantly asserts that "the *Williams* Court limited its analysis to an interpretation of the language of section 5—5—3(c)(8)." The court also based its holding on due process cases like *McMillan v. Pennsylvania*, 477 U.S. 79, 91 L. Ed. 2d 67, 106 S. Ct. 2411 (1986). We agree with the holdings in *Givens*, *Lathon*, and *Williams* that due process does not require a heightened standard of proof for section 5—5—3(c)(8).

## CONCLUSION

For the foregoing reasons, the judgment of the Will County circuit court is affirmed.

Affirmed.

HOLDRIDGE and LYTTON, JJ., concur.