2020 IL App (1st) 171718-U

No. 1-17-1718

Order filed August 28, 2020

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 CR 5134 |
| | ) | |
| MAURICE HUDSON, | ) | Honorable |
| | ) | Maura Slattery Boyle, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HALL delivered the judgment of the court.
Justices Rochford and Delort concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The summary dismissal of defendant's *pro se* postconviction petition is affirmed over his contention that it set forth the gist of a claim that he was not fit at the time of his guilty plea.

¶ 2    Defendant Maurice Hudson appeals from the summary dismissal of his *pro se* petition for relief filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). On appeal, defendant contends that the circuit court erred when it dismissed his petition because it set forth the gist of a claim that he was not fit at the time of his guilty plea. We affirm.

¶ 3    Following the shooting death of Jorge Palacios on October 22, 2010, defendant was arrested and charged with multiple counts of first degree murder.

¶ 4    On May 25, 2011, defense counsel asked the court to order a fitness evaluation for defendant due to counsel's difficulty communicating with defendant about the case. In a June 10, 2011, letter, Dr. Nicholas Jasinski from Forensic Clinical Services found defendant "minimally cooperative" and rendered no opinion on fitness. In an August 11, 2011, letter, another doctor from Forensic Clinical Services, Dr. Nishad Nadkarni, found defendant fit to stand trial and stated no evidence showed that he manifested psychiatric or cognitive impairment or side effects from his prescribed antipsychotic medication.

¶ 5    On August 24, 2011, defense counsel asked the court to order defendant evaluated by a different doctor. Letters from Drs. Jasinski and Nadkarni from Forensic Clinical Services dated September 20, 2011, and November 4, 2011, respectively, found defendant fit and stated that no evidence demonstrated a mental, psychiatric, or cognitive impairment which precluded him from assisting in his defense. A summary attached to Dr. Nadkarni's letter indicated that defendant denied experiencing psychiatric symptoms or inpatient psychiatric treatment while in jail, and that medical records did not indicate signs or symptoms of "major mental illness" or cognitive impairment. Defendant did not show side effects from his Trazodone and Benadryl prescriptions, evidenced no "mental illness that would necessitate his taking psychotropic medications in order to maintain his functioning," and presented as "calm and cooperative."

¶ 6    A fitness hearing was held on December 8, 2011. The State called Dr. Nadkarni, who testified that he evaluated defendant on August 10, 2011, and November 3, 2011. Defendant was "terse in speech" but evidenced no psychiatric or cognitive impairments. At the time of the first

interview, defendant was prescribed Benadryl, Trazodone, and Risperidone.[1] At the time of the second interview, defendant was prescribed Benadryl and Trazodone. Dr. Nadkarni explained that Risperidone is usually prescribed as an antipsychotic for "stabilization of thinking in individuals with mental illness," and can also be used as an anti-agitation agent for someone with a history of violence. Trazodone was an antidepressant used as a sleep aid "in this context." During their meetings, defendant denied being hospitalized or receiving psychiatric treatment, was cooperative, and understood the nature of courtroom proceedings and the consequences of being found guilty. Dr. Nadkarni diagnosed defendant with no mental disorder on Axis I, which covered primary mental disorders or "problems." Dr. Nadkarni therefore concluded that defendant was fit to stand trial, had an adequate capacity to assist counsel in his defense if he chose to do so, and understood the charges and the nature of the courtroom proceedings. After hearing argument, the trial court found defendant fit to stand trial.

¶ 7    On May 23, 2012, Dr. Linda Gruenberg, a forensic psychiatrist retained by the defense, evaluated defendant and found him unfit to stand trial. Defendant was then reevaluated by Forensic Clinical Services. In a letter dated August 30, 2012, Dr. Nadkarni found defendant fit to stand trial. The trial court held a second fitness hearing beginning on October 10, 2012.

¶ 8    In its opening statement, the defense asserted that at the conclusion of testimony the court would determine that defendant was "currently fit," but would "remain fit only if he is taking his medication." The defense further stated that without medication defendant would decompensate, be unable to communicate with counsel, and become unfit to stand trial.

---

[1] This drug is referred to as both Risperdal and Risperidone in the record. For clarity, we will use Risperidone throughout.

¶ 9 The State called Dr. Nadkarni, who testified that defendant had been evaluated by Forensic Clinical Services six times. Dr. Nadkarni met with defendant three times and interviewed him twice. Every time that defendant cooperated during an interview, he was found fit.

¶ 10 During the case, Dr. Nadkarni reviewed police reports and documents relating to the offense, defendant's medication profile and medical records from Cermak Health Services, the referral orders, and prior forensic psychiatric summaries. Dr. Nadkarni also reviewed, in pertinent part, Dr. Gruenberg's report, defendant's criminal history reports, and defendant's military, educational, and "Veteran's Medical Administration" records.

¶ 11 Dr. Nadkarni opined that defendant was fit to stand trial. Defendant had no signs of psychiatric or cognitive impairment, no signs of psychosis, and was responsive to questions and logical in the thinking process. Defendant denied any psychiatric problems or psychiatric treatment. Dr. Nadkarni acknowledged that defendant was prescribed psychotropic medication. After defendant had an altercation with another inmate in January 2012, and then one with his cellmate, defendant was put back on Risperidone. Dr. Nadkarni testified that inmates without mental illness were prescribed Risperidone or other psychotropic medications to control behavior or anger. The defense objected, and the court overruled the objection.

¶ 12 Dr. Nadkarni further testified that when defendant was cooperative, he demonstrated a "rather sophisticated high-level understanding of his charges," knew the consequences of being found guilty, and understood the basics of courtroom proceedings and the roles of courtroom personnel. Dr. Nadkarni "consistently" diagnosed defendant with "no mental disorder" and determined he did not suffer from mental illness. Dr. Nadkarni concluded that defendant was fit to stand trial because he could cooperate with his attorney if he wished and no evidence showed *bona*

*fide* mental disease. Dr. Nadkarni further opined that if defendant did not cooperate with counsel, it was a volitional choice. He did not believe that defendant needed medication to stand trial or that defendant needed medication at all, as defendant was both cooperative and uncooperative regardless of medication status.

¶ 13    During cross-examination, Dr. Nadkarni acknowledged that he did not speak to any of the Cermak Health Services doctors who prescribed Risperidone to defendant, but reviewed defendant's medical records. Dr. Nadkarni acknowledged that these records indicated, in pertinent part, that defendant (1) was paranoid, had grandiose thoughts, and heard buzzing noises when in contact with electronics, (2) declined medication, although medication was not mandated because he was not psychotic, and (3) later admitted that he regretted declining medication. Dr. Nadkarni explained that Risperidone is an antipsychotic and mood stabilizer. Defendant was prescribed Risperidone from April 2011 until October 2011, and later placed back on it. Defendant was housed in the jail's Division 10 with other inmates prescribed medication. Dr. Nadkarni reviewed documents from the Department of Children and Family Services which stated that defendant's mother suffered from a mental illness, and agreed that schizophrenia can be intergenerational. He further agreed that patients with schizophrenia can be noncompliant with medication and that defendant's records indicated that he would occasionally not take his medication. However, Dr. Nadkarni concluded that regardless of whether defendant was prescribed Risperidone or not, there was no change in his mental status.

¶ 14    At the close of testimony, Dr. Gruenberg's report was admitted into evidence at the defense's request. In the report, she concluded that defendant was unfit to stand trial and unable to cooperate with his attorney or demonstrate his understanding of courtroom procedures. Dr.

Gruenberg's report noted that defendant exhibited significant suspiciousness, paranoia, and possible delusions, and found "significant concern" that he suffered from a paranoid delusional illness. The report further noted that when defendant was found fit by Forensic Clinical Services, he was either prescribed Risperidone or had immediately discontinued taking it, *i.e.*, the medication was in his system. The report concluded that defendant required immediate psychiatric treatment with antipsychotic medication, lacked insight into his illness, discontinued his medication due to distrust of doctors, and could "deteriorate" without psychiatric treatment.

¶ 15    At the conclusion of the second fitness hearing, the court found defendant fit, that he was not "in requirement of any medication," and that the Risperidone did not affect, nor would it affect, defendant's ability to engage with the court or defense counsel; rather, defendant made "volitional choices."

¶ 16    On December 29, 2014, defendant entered a plea of guilty to first degree murder. As part of the factual basis for the plea, the parties stipulated that the evidence would show defendant told police he killed the victim because "he hates Hispanics." At the next court date, the parties made arguments in aggravation and mitigation. Defense counsel stated that the court heard about defendant's mental health issues, which have been considered substantial mitigation, and asked the court to recommend that defendant receive mental health treatment in prison. In sentencing defendant to 40 years in prison for first degree murder (720 ILCS 5/9-1(a)(1) (West 2010)), the court noted, in pertinent part, that defendant was fit, "has been fit," and was aware of his actions.

¶ 17    On May 22, 2015, defendant mailed a *pro se* motion to withdraw the plea and "vacate sentence," alleging that he was not competent to enter a plea because he was off psychotropic drugs for 168 hours, the plea resulted from coercion, and trial counsel failed to explain that he only

had 30 days to move to withdraw the guilty plea. On August 14, 2015, the trial court denied the motion as untimely. There is no indication that defendant filed an appeal.

¶ 18 On April 5, 2017, defendant filed a *pro se* postconviction petition alleging that he was not competent to enter a plea because he was "off his meds" for more than 100 hours at the time of his plea. The petition further alleged that defendant was coerced into pleading guilty and denied the effective assistance of counsel when counsel failed to inform the court of defendant's mental health conditions and called defendant a " 'little B***' " because he would not enter a guilty plea. Attached to the petition were a notice of settlement in a federal class action regarding changes to the mental health care system for prisoners in the Illinois Department of Corrections (DOC), defendant's 2013 certificate for completing the mental health recovery program at Cermak Health Services, a 2017 letter from defendant regarding prison mail, a DOC "Cumulative Counseling Summary" which indicated that defendant was housed in the psychiatric unit, and an affidavit from a prison law clerk averring that he helped defendant file a postconviction petition due to defendant's "mental disabilities." Also attached were several affidavits from defendant averring to his physical condition, prison conditions, and his efforts to file a motion to withdraw his plea.

¶ 19 On May 15, 2017, the circuit court summarily dismissed the petition as frivolous and patently without merit in a written order. The court noted, in pertinent part, that defendant failed to attach any evidence to support his claim that he had not taken his medication prior to the plea hearing and "the record rebuts [his] assertion that he was unfit when he entered his plea."

¶ 20 On appeal, defendant contends that the circuit court erred when it dismissed his postconviction petition, which presented the gist of a claim that his guilty plea was not knowing

and voluntary because he was unfit at the time of the plea where he was not taking "required" psychotropic medication and the record reveals symptoms of mental illness.

¶ 21    The Act provides a procedural mechanism through which a defendant may assert a substantial denial of his constitutional rights in the proceedings which resulted in his conviction. 725 ILCS 5/122-1 *et seq.* (West 2016). A proceeding under the Act is "not a substitute for a direct appeal, but rather is a collateral attack on a prior conviction and sentence." *People v. Davis*, 2014 IL 115595, ¶ 13. The Act allows inquiry into constitutional issues arising in the original proceeding that were not raised and could not have been adjudicated on direct appeal. *Id.* Issues raised and decided on direct appeal are barred by the doctrine of *res judicata*, and issues that could have been raised on direct appeal, but were not, are forfeited. *Id*.

¶ 22    At the first stage of proceedings under the Act, a defendant files a petition, which the circuit court independently reviews and, taking the allegations as true, determines whether it is frivolous or is patently without merit. *People v. Tate*, 2012 IL 112214, ¶ 9. A petition should be summarily dismissed as frivolous or patently without merit only when it has no arguable basis in either fact or law. *People v. Hodges*, 234 Ill. 2d 1, 11-12 (2009). A petition lacks an arguable basis in fact or law when it "is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* at 16. Fanciful factual allegations are those which are "fantastic or delusional," and an indisputably meritless legal theory is one that is "completely contradicted by the record." *Id*. at 16-17. We review the summary dismissal of a postconviction petition *de novo*. *Id.* at 9.

¶ 23    Here, defendant argues that his petition raised the gist of a clam that he was unfit at the time of his plea because he was not taking his medication. He notes that the attachments to the petition establish that he completed a mental health program at Cermak Health Services prior to

his plea, was housed in a prison psychiatric unit, and needed help to file his postconviction petition due to his mental difficulties. Defendant further asserts that the record is "replete" with evidence that supports his contention that he had a mental condition which affected his fitness to enter a guilty plea.

¶ 24   While the prosecution of a defendant who is not fit to stand trial violates due process (*People v. Haynes*, 174 Ill. 2d 204, 226 (1996)), a defendant is presumed to be fit to stand trial, plead guilty, and be sentenced, and will be considered unfit for these purposes only where, due to his mental or physical condition, he is not able to understand the nature and purpose of the proceedings against him or to assist in his defense (725 ILCS 5/104-10 (West 2014); *People v. Easley*, 192 Ill. 2d 307, 318 (2000)). "To enter a voluntary plea of guilty, a defendant must understand the nature of the proceedings against him and be competent to assist in his own defense." *People v. Shanklin*, 351 Ill. App. 3d 303, 306 (2004); see also 725 ILCS 5/104-10 (West 2016). "Fitness speaks only to a person's ability to function within the context of a trial; a defendant may be fit to stand trial even though the defendant's mind is otherwise unsound." *People v. Griffin*, 178 Ill. 2d 65, 79 (1997).

¶ 25   Here, even accepting defendant's allegation that he had not taken his medication for more than 100 hours prior to the entry of his guilty plea, he has failed to provide factual support for his conclusion that he was unfit at the time of his plea. Pursuant to section 122-2 of the Act, a petition "shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2016). The failure to attach "the necessary 'affidavits, records, or other evidence' or explain their absence is 'fatal' to a

postconviction petition," and this failure "by itself" justifies the petition's summary dismissal. *People v. Collins*, 202 Ill. 2d 59, 66 (2002).

¶ 26    In the case at bar, although the certificate from Cermak Health Services is dated prior to defendant's plea, it states that defendant successfully completed the mental health program and does not mention medication. Moreover, the other documents attached to his petition are dated after his plea, and, therefore, do not speak to defendant's fitness or ability to understand the proceedings at the time of his plea. Accordingly, these documents do not support the petition's allegation that defendant was unfit at the time of his plea due to his failure to take his medication. See 725 ILCS 5/122-2 (West 2016).

¶ 27    Moreover, the petition's unsupported allegation that defendant was rendered unfit by his failure to take his medication is contradicted by the record. Defendant underwent multiple fitness evaluations, doctors opined he was fit multiple times, and the trial court conducted two fitness hearings. The issue of whether defendant was fit or fit with medication was raised before the trial court during the second fitness hearing. Dr. Nadkarni testified that defendant's cooperation or lack thereof was not based upon whether he took Risperidone, and that when defendant cooperated, he demonstrated "high-level understanding of his charges." Dr. Nadkarni consistently diagnosed defendant with "no mental disorder" and found no evidence of a *bona fide* mental disease. Dr. Nadkarni further opined that Risperidone was often prescribed to inmates without mental illness in order to control behavior or anger, and the mere fact that defendant was prescribed Risperidone did not mean that he had a mental illness. Rather, Dr. Nadkarni concluded that defendant's decision to cooperate remained a volitional choice whether he took Risperidone or not.

¶ 28     Although the defense presented the report of a clinician who concluded that defendant was unfit to stand trial and was only found fit when he was on Risperidone or immediately after he discontinued taking it, Dr. Nadkarni disagreed. After multiple interviews with defendant, Dr. Nadkarni concluded that defendant was fit to stand trial, had an adequate capacity to assist counsel should he do choose to do so, and understood the charges and the courtroom proceedings. Dr. Nadkarni further concluded that, regardless of whether defendant was prescribed Risperidone, there was no change in his mental status. At the close of the second fitness hearing, the trial court found defendant was fit and did not require medication. Thus, defendant's claim that he was rendered unfit because he did not take his medication prior to the entry of his guilty plea is contradicted by the record.

¶ 29     To the extent defendant posits that other circumstances were fatal to the plea, including allegedly difficult interactions with his attorneys, the nature of the offense, and Dr. Gruenberg's belief that his condition could deteriorate, we disagree. Fitness speaks to a defendant's ability to understand the nature of the proceedings against him and to assist in his own defense (see 725 ILCS 5/104-10 (West 2016)), and the fact that defendant clashed with his attorney or the unexplained nature of the offense do not bear on defendant's ability to understand the plea proceedings and enter a plea. Additionally, Dr. Gruenberg's opinion that defendant was unfit when he was not taking Risperidone was refuted on the record by Dr. Nadkarni and the trial court's determination at the second fitness hearing that defendant was fit and did not require medication.

¶ 30     Based on the foregoing, the circuit court properly summarily dismissed the postconviction petition as frivolous and patently without merit.

¶ 31     For the forgoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 32    Affirmed.