THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD SHANKLIN, Defendant-Appellant.

Fourth District   No. 4—01—0947

Opinion filed July 23, 2004.

Michael J. Pelletier and Robert Brent Pennington, both of State Appellate Defender's Office, of Chicago, for appellant.

William A. Yoder, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and Charles F. Mansfield, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

On September 21, 2001, defendant, Ronald Shanklin, filed a *pro se* petition for postconviction relief, alleging (1) he was unfit or incompetent when he entered his guilty plea and could not have understood the ramifications of the plea agreement; (2) he received

ineffective assistance of counsel because trial counsel failed to alert the trial court defendant was unfit for legal proceedings; and (3) trial counsel was ineffective for failure to cross-examine the victim at defendant's sentencing hearing. On October 12, 2001, the trial court dismissed defendant's petition as frivolous and patently without merit pursuant to section 122—2.1(a)(2) of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122—2.1(a)(2) (West 2000)). Defendant appeals, contending the trial court erred in summarily dismissing his petition. We reverse and remand.

## I. BACKGROUND

On May 9, 2000, in the middle of a bench trial, defendant pleaded guilty to attempt (murder) (720 ILCS 5/8—4, 9—1(a)(1) (West 2000)). A plea agreement had been presented to the court on May 8, but defendant apparently became "frustrated" and stopped the plea agreement proceeding. The trial was to resume the following day. The agreement was retendered, and defendant pleaded guilty. A sentencing hearing was held on June 26, 2000. Included in the presentence investigation report was information obtained by the probation officer that defendant had been hospitalized three times for mental-health problems. Tests completed during his hospital stays indicated defendant was mildly mentally retarded and had significant problems retaining and receiving verbal information. Defendant was sentenced to 19 years in prison, the maximum amount to which he had agreed in his plea bargain. He was also ordered to pay $22,395.60 in restitution.

On July 6, 2000, defense counsel filed a motion to vacate the judgment and withdraw defendant's guilty plea, arguing defendant did not intelligently and knowingly waive his rights as he did not fully understand or comprehend the trial court's admonishments when he entered his guilty plea. On July 11, 2000, defendant filed a *pro se* motion to withdraw his guilty plea, arguing (1) defense counsel persuaded him to plead guilty and (2) he had reported he had mental problems to counsel but counsel did not look into them prior to his guilty plea.

On June 7, 2001, at the hearing on defendant's motions to withdraw guilty plea, defendant advised the trial court he was withdrawing his motions to withdraw his guilty plea. Defendant stated he did not wish to withdraw his guilty plea and set the case for trial, and he acknowledged this action would terminate his direct appeal rights. He stated he discussed this course of action with his family and defense counsel and no one coerced him into taking this action.

On September 21, 2001, defendant filed a *pro se* postconviction petition. In his petition, he alleged he was unfit or incompetent when he entered his guilty plea and could not have understood the ramifica-

tions of the plea agreement. Defendant also alleged he received ineffective assistance of counsel because trial counsel failed to alert the trial court defendant was unfit for legal proceedings despite the fact defendant advised counsel of defendant's mental-health history. He further alleged trial counsel was ineffective for failure to cross-examine the victim at defendant's sentencing hearing.

Defendant supported his petition with copies of a psychological evaluation from Hartgrove Hospital, which indicated he had severely impaired judgment and a depressive disorder. The evaluation further indicated he was functioning at a mildly retarded range of intelligence. Test results indicated defendant displayed significant impairment in verbal learning skills, which suggested difficulty in receiving and retaining verbal information. Defendant alleged because of his impaired mental capacity he could not possibly have understood the ramifications of the plea agreement.

On October 12, 2001, the trial court dismissed the petition as frivolous and patently without merit. This appeal followed.

## II. ANALYSIS

On appeal, defendant renews two issues raised in his postconviction petition, arguing (1) his low mental capacity prevented him from understanding the ramifications of his guilty plea and (2) defense counsel was ineffective for failing to investigate the issue of his fitness to plead guilty. He also raises a new issue: (3) he was not admonished of the possibility of a restitution order as part of his sentence prior to pleading guilty.

The Act authorizes defendants to file postconviction petitions to establish "a substantial deprivation of federal or state constitutional rights." *People v. Haynes*, 192 Ill. 2d 437, 464, 737 N.E.2d 169, 184 (2000). To succeed in receiving postconviction relief, a defendant must state the ways in which his constitutional rights were violated and must provide affidavits, records, or other evidence to support the allegations or explain why none could be obtained. 725 ILCS 5/122—2 (West 2002).

Adjudication of a postconviction petition follows a three-stage process. *People v. Gaultney*, 174 Ill. 2d 410, 418, 675 N.E.2d 102, 106 (1996). At the first stage, the trial court must review the petition within 90 days and summarily dismiss the petition if it is frivolous or patently without merit. 725 ILCS 5/122—2.1(a) (West 2002). To survive summary dismissal, a *pro se* petitioner need only raise the "gist" of a constitutional claim. *People v. Coleman*, 183 Ill. 2d 366, 380 n.2, 701 N.E.2d 1063, 1071 n.2 (1998). A petition need only present a limited amount of detail to survive summary dismissal because, by

definition, a "gist" of a claim is something less than a completely pleaded or fully stated claim. *People v. Edwards*, 197 Ill. 2d 239, 244, 757 N.E.2d 442, 446 (2001).

If a petition is not dismissed, counsel is appointed and given an opportunity to amend the petition. The State may then move to dismiss the petition on its merits. 725 ILCS 5/122—4, 122—5 (West 2002); *Edwards*, 197 Ill. 2d at 245-46, 757 N.E.2d at 446. Review of the summary dismissal of a postconviction petition is *de novo*. *Edwards*, 197 Ill. 2d at 247, 757 N.E.2d at 447.

■ To enter a voluntary plea of guilty, a defendant must understand the nature of the proceedings against him and be competent to assist in his own defense. *People v. Bleitner*, 199 Ill. App. 3d 146, 151, 556 N.E.2d 819, 821-22 (1990). The standard is the same whether a defendant is standing trial or pleading guilty. *People v. Heral*, 62 Ill. 2d 329, 334, 342 N.E.2d 34, 37 (1976).

■ Generally, limited intellectual ability, without more, does not render a defendant unfit to stand trial. *People v. Johnson*, 183 Ill. 2d 176, 194, 700 N.E.2d 996, 1005 (1998). This case, however, involved more than just low mental capacity. Defendant was admitted to Hartgrove Hospital in Chicago on three separate occasions when he was 15 and 16 years old during 1995 and 1996. He was seen for violent and disruptive behavior and assessed by psychiatric and social-work staff. The hospital report from that time period attached to defendant's *pro se* postconviction petition concluded defendant had a low intelligence quotient (IQ) in the mildly mentally retarded range and a history of mental-health treatment.

The reference to mental retardation by the hospital staff should have been viewed as a diagnosis of a mental defect. That diagnosis included the assessment defendant had difficulty receiving and retaining verbal information. During an intelligence exam, defendant refused to complete a written task unless the examiner read and wrote the sentences. This indicated to the examiner defendant has "significantly more difficulty in attending to verbal tasks that [*sic*] non[ ]verbal ones." Although defendant had the ability to repeat a series of numbers, he could not adequately define words. This inability indicated "a lack of acquisition to begin with as well as a continued avoidance of those tasks which may call upon him to respond to verbal material."

■ The report indicates defendant may not have been able to fully comprehend what was being verbally communicated to him either by counsel or the trial court as to the consequences of a guilty plea in this case. While the trial court stated in its order dismissing the postconviction petition that the record showed defendant gave responses

indicating he understood the proceedings and the consequences of his plea, his mental history would seem to indicate he may *not* have understood.

In *Atkins v. Virginia*, 536 U.S. 304, 308 n.3, 153 L. Ed. 2d 335, 342 n.3, 122 S. Ct. 2242, 2245 n.3 (2002), quoting American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders 41 (4th ed. 2000) the Court identified an IQ between 70 and 75 or lower as " 'significantly subaverage general intellectual functioning.' " While IQ alone should not be determinative in a diagnosis of mental retardation, the information in the presentence investigation focuses on defendant's deficiencies in "receiving and retaining verbal information." The information from Hartgrove Hospital indicates mental-health professionals made a clinical judgment that defendant had significant problems in his verbal learning skills and an IQ in the mildly mentally retarded range.

When confronted by a defendant who may be mentally retarded, the trial court and both prosecution and defense may not simply rely on affirmative answers to rote questions to conclude the defendant understands the proceedings and the consequences of his plea.

We do not suggest a mentally retarded defendant is always unfit or that a mentally retarded defendant can never plead guilty. While many mentally retarded persons accused of crime are competent, we also know the mentally retarded have diminished capacity to understand and process information. *Atkins*, 536 U.S. at 318, 153 L. Ed. 2d at 348, 122 S. Ct. at 2250. The Hartgrove Hospital records suggest defendant was likely to avoid academic situations that would cause him shame or embarrassment. It is not idle speculation to consider whether defendant may have answered questions from the court in a way that would avoid exposing his intellectual deficit.

A judge may be confronted with an individual who will attempt to conceal his mental disability. A cooperative defendant—particularly one who has been in court before—could conceal his lack of comprehension. It is incumbent on the attorney representing a mentally retarded defendant to make this fact known to the trial court and for the trial court to proceed with care in accepting a plea.

Contrary to Justice Scalia's dissenting opinion in *Atkins*, 536 U.S. at 353, 153 L. Ed. 2d at 374, 122 S. Ct. at 2267-68, (Scalia, J., dissenting, joined by Rehnquist, C.J., and Thomas, J.) a defendant cannot readily feign the symptoms of mental retardation. The onset of retardation must be by the age of 18. We are not opening the floodgates to defendants who will fake retardation. It is unlikely defendant began faking symptoms when he was 15 or 16 years old to later use his manufactured retardation to confuse the justice system in this attempt (murder) case.

A detailed summary of the hospital report was included in the presentence investigation report filed with the court at the time of defendant's sentencing hearing. While defendant may have the capacity to have understood the proceedings, at sentencing the trial court should have been on notice there was either a *bona fide* doubt of defendant's fitness to enter his guilty plea or at least a serious question as to his ability to comprehend what he was being asked. A hearing should have been held to determine his actual fitness.

Defendant alleges he told defense counsel of his mental-health history prior to entry of his guilty plea and counsel should have investigated. Even if defense counsel had not known of defendant's mental-health history prior to entry of the plea, he was clearly on notice at the time of defendant's sentencing. Defense counsel should have brought this to the trial court's attention by either requesting a hearing on defendant's fitness or asking the trial court to question defendant carefully as to the plea he entered and the consequences.

To establish ineffective assistance of counsel, a defendant must satisfy both prongs of the *Strickland* test. *People v. Evans*, 186 Ill. 2d 83, 94, 708 N.E.2d 1158, 1164 (1999); *Strickland v. Washington*, 446 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). A defendant must prove counsel's performance fell below an objective standard of reasonableness and that, absent counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163-64.

> "To establish that the failure to request a fitness hearing prejudiced a defendant within the meaning of *Strickland*, a defendant must show that facts existed at the time of trial that would have raised a *bona fide* doubt of his ability 'to understand the nature and purpose of the proceedings against him or to assist in his defense.' " *People v. Harris*, 206 Ill. 2d 293, 304, 794 N.E.2d 181, 189 (2002), quoting 725 ILCS 5/104—10 (West 1998).

As we noted above, the facts may have raised a *bona fide* doubt of defendant's fitness or, at a minimum, required the trial court to go well beyond the standard admonitions. Therefore, defense counsel's failure to request a fitness hearing resulted in prejudice to defendant and was the result of ineffective assistance of counsel.

We find the gist of a constitutional claim was provided by defendant in his allegation that he was unable to understand the nature of the proceedings; he should have had a hearing to determine his fitness to enter a guilty plea, and he received ineffective assistance when defense counsel failed to request such a hearing.

## III. CONCLUSION

We reverse the trial court's summary dismissal of defendant's

postconviction petition and remand for appointment of counsel and further proceedings as pursuant to the Act. We need not reach the issue of the propriety of the restitution order raised by defendant for the first time in this appeal.

Reversed and remanded.

APPLETON, J., concurs.

JUSTICE COOK, dissenting:
I respectfully dissent and would affirm the trial court's decision.

Defendant was charged with attempt (murder) as a result of a December 2, 1999, stabbing. Counsel was appointed to represent defendant. Counsel met with defendant and discussed his defense with him. As in *Harris*, 206 Ill. 2d at 305, 794 N.E.2d at 190, "On several occasions, the court provided defendant with a detailed explanation of the proceedings and informed defendant of his rights during those proceedings. Following these admonishments, defendant stated that he understood." The supreme court in *Harris* held that the trial court correctly dismissed defendant's postconviction petition without a hearing.

Defendant appeared in open court and entered a plea of not guilty. The matter was set for bench trial. Trial commenced. On May 8, 2000, defendant asked that the trial be halted and that he be allowed to enter a negotiated plea of guilty. As the trial court began to speak to defendant about the plea and what he was charged with, problems apparently developed, and the court continued the matter to the next day. On May 9, the court said to the defendant, "And I guess I don't need to know what stopped you except that have you discussed whatever it was with your attorney? Whatever it is that stopped you yesterday?" Defendant responded that he had. A discussion then ensued where defendant indicated that he participated in the criminal offense but not the physical act of stabbing. The trial court then gave defendant Rule 402 admonitions (177 Ill. 2d R. 402), and defendant repeatedly told the court he understood. Defendant never made a request for a fitness hearing and never asserted he was unfit until his postconviction petition was filed.

Defendant decided to plead guilty in the middle of a trial. This is not a case where defendant was rushed through the system without anybody paying much attention to him. The trial was apparently not going well for defendant. He was able to bring it to a halt with his unexpected plea. Now he wants the State to start over. Defendant was able to understand the nature of the proceedings against him and to

assist in his defense. In fact, defendant has been somewhat clever. By refusing to file a motion to withdraw his guilty plea, defendant has preserved the benefit of his plea negotiation and now seeks to get his sentence reduced even further by reneging on that agreement, in violation of *People v. Evans*, 174 Ill. 2d 320, 327-28, 673 N.E.2d 244, 248 (1996).

According to the majority, "When confronted by a defendant who may be mentally retarded, the trial court and both prosecution and defense may not simply rely on affirmative answers to rote questions to conclude the defendant understands the proceedings and the consequences of his plea." 351 Ill. App. 3d at 307. First of all, I disagree the court asked only "rote questions." I further disagree with the majority's statement of when the court must, *sua sponte*, order a fitness hearing.

When a *bona fide* doubt as to defendant's fitness to stand trial exists, the court must order a fitness hearing to resolve the question of fitness before the case proceeds any further. 725 ILCS 5/104—11(a) (West 2000). Whether a *bona fide* doubt as to defendant's fitness has arisen is generally a matter within the discretion of the trial court, and its decision will not be reversed absent an abuse of that discretion. *People v. Hill*, 345 Ill. App. 3d 620, 625-26, 803 N.E.2d 138, 143 (2003). "Evidence that a defendant suffers from mental disturbances or requires psychiatric treatment does not necessarily establish that he is unfit to stand trial." *Hill*, 345 Ill. App. 3d at 628, 803 N.E.2d at 145 (holding that the court did not abuse its discretion in failing to *sua sponte* order a fitness hearing). Even the appointment (at defense counsel's request) of an expert to conduct a psychiatric examination and the failure to follow through with that examination does not necessarily lead to an abuse of discretion when no fitness hearing is ordered. See *People v. Vernon*, 346 Ill. App. 3d 775, 805 N.E.2d 1222 (2004).

What should the trial court do in a situation like this? There are no perfect answers. The court can only give the matter its careful attention and do its best. "[T]here are 'no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated.' " *People v. Eddmonds*, 143 Ill. 2d 501, 518, 578 N.E.2d 952, 959 (1991), quoting *Drope v. Missouri*, 420 U.S. 162, 180, 43 L. Ed. 2d 103, 118, 95 S. Ct. 896, 908 (1975). Was defendant able to understand his plea? Perhaps the best thing was to adjourn the matter for a day or two and let defendant talk to his attorney and think about what he was doing. The court did that here.

The majority's decision on the issue of ineffective assistance of counsel is contrary to the supreme court's recent decision in *Harris*. A defendant is entitled to relief from alleged ineffective assistance of counsel *only* if he shows that the trial court would have found a *bona fide* doubt of his fitness and ordered a fitness hearing if it had been apprised of the evidence now offered. *Harris*, 206 Ill. 2d at 305, 794 N.E.2d at 189. It is not enough that "the facts may have raised a *bona fide* doubt of defendant's fitness or, at a minimum, required the trial court to go well beyond the standard admonitions," as the majority found in the present case. 351 Ill. App. 3d at 308.

It is not enough that defendant in the present case was admitted to Hartgrove Hospital when he was 15 and 16 years old during 1995 and 1996, and the hospital report concluded that defendant had a low IQ in the mildly mentally retarded range and a history of mental health treatment. 351 Ill. App. 3d at 306. Allegations that defendant suffers from mental impairments do not necessarily establish that defendant was unfit. The issue is whether defendant could understand the proceedings and cooperate with counsel. Fitness speaks only to a person's ability to function within the context of a trial. It does not refer to sanity or competence in other areas. *Harris*, 206 Ill. 2d at 305, 794 N.E.2d at 190. Again, *Harris*, on facts similar to those in the present case, held that the trial court correctly dismissed defendant's postconviction ineffective-assistance claim without a hearing. We should follow *Harris*.