NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180796-U

NO. 4-18-0796

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 10, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| JOSHUA FARNER, | ) | No. 17CF189 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court.
Justices Cavanagh and Harris concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The appellate court affirmed the trial court's denial of defendant's motion to
withdraw guilty plea.

¶ 2   In June 2017, the State charged defendant, Joshua Farner, with one count of
aggravated battery (720 ILCS 5/12-3.05(d)(4)(i) (West 2016)), alleging that in May 2016,
defendant threw an unknown liquid substance on Timothy Bowden, an Illinois Department of
Corrections (DOC) employee. At the time of the offense, defendant was located at Pontiac
Correctional Center in the mental health ward. He had previously been diagnosed with numerous
mental health problems.

¶ 3   Throughout the proceedings, defendant had occasional outbursts in court, and on at
least one occasion, his appointed counsel, an assistant public defender, made representations to the
trial court that he had difficulty communicating with defendant. In August 2018, counsel filed a

motion requesting that the court appoint a psychiatrist to determine whether a *bona fide* doubt existed as to defendant's fitness to stand trial and to render an opinion as to his sanity at the time of the offense. The court never addressed the motion, and counsel never took further action in relation to it.

¶ 4 In August 2018, defendant pleaded guilty but mentally ill in exchange for a sentence of six years in prison, to run consecutively to the sentence he was already serving.

¶ 5 In September 2018, defendant *pro se* filed a motion to withdraw his guilty plea. In October 2018, the trial court conducted a hearing at which the court asked defendant whether he wanted the previous assistant public defender to assist him with his motion or whether he would prefer to proceed *pro se*. Defendant ultimately agreed to have the public defender represent him.

¶ 6 In December 2018, the trial court conducted a hearing on defendant's motion at which the court noted it had received from counsel a certificate of compliance with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). The court denied the motion to withdraw.

¶ 7 Defendant appeals, arguing that (1) the trial court abused its discretion by denying his motion to withdraw guilty plea, (2) the trial court erred by denying defendant's request for new counsel to represent him on his motion to withdraw his guilty plea, and (3) counsel failed to comply with Rule 604(d). We disagree and affirm the trial court's judgment.

¶ 8 I. BACKGROUND

¶ 9 A. Pretrial Proceedings

¶ 10 In June 2017, the State charged defendant with one count of aggravated battery in violation of section 12-3.05(d)(4)(i) of the Code of Criminal Procedure of 2012. 720 ILCS 5/12-3.05(d)(4)(i) (West 2016). The charge alleged that in May 2016, defendant threw an unknown liquid substance on Timothy Bowden, a DOC employee. At the time of the offense, defendant was

located at Pontiac Correctional Center in the mental health ward.

¶ 11        In August 2017, the trial court appointed the public defender to represent defendant. In September 2017, counsel filed a motion seeking defendant's psychiatric records. In October 2017, counsel informed the court that he had received defendant's records. In December 2017, counsel requested that the case be set for trial.

¶ 12        In February 2018, the trial court conducted a hearing at which the court asked counsel if defendant was ready for trial. Defendant interjected, "Why are you asking him? Why are you asking him if he is ready for trial. I am the one you should be asking. What's wrong with you, Lady?" The court replied, "All right. I am not—really not in the mood. It has been a very long day." Defendant responded, "I don't give a fuck what kind of mood you are in." The court had defendant removed, and as defendant left, he called the court a "stupid bitch." Counsel informed the court that he had been having difficulty communicating with defendant that day and "much of it has been what the Court just experienced." In April 2018, defendant told the court, "Ma'am, I wanted to apologize to you for my last court date on the video screen. I wasn't taking my medication."

¶ 13        In a June 2018 pretrial hearing, counsel told defendant that defendant would receive a letter soon discussing some of the issues in the case. Counsel also noted that he scheduled a phone conference with defendant the following week. Counsel stated that he had spoken with defendant's expert witnesses.

¶ 14        Later that month, counsel informed the trial court that he was not ready for trial because defendant had "raised an issue with me in respect to mental health which we are addressing[.]" In August 2018, counsel filed a motion requesting that the court appoint Dr. Terry Killian, a psychiatrist, to determine whether a *bona fide* doubt existed as to defendant's fitness to

stand trial and to render an opinion regarding defendant's sanity at the time of the alleged offense. Neither counsel nor the court took any further action on that motion.

¶ 15                     B. Defendant's Guilty Plea

¶ 16        Later in August 2018, counsel informed the trial court that the parties were working out a plea deal. Counsel explained, "The proposal is a plea of guilty but mentally ill so that we can get him into a hospital *** rather than a correctional center." Counsel said that he had reviewed defendant's mental health records "from when the case was first filed," ending in mid-to-late 2017. Counsel explained that defendant deteriorated at Pontiac Correctional Center. Counsel spoke with the people who treated defendant while at Pontiac and had requested, but not yet received, defendant's most recent medical records. Counsel further stated, "We do not have a separate report from Dr. Killian."

¶ 17        Counsel continued that the records he had indicated that defendant had been hospitalized and civilly committed since he was 13 years old. Defendant had been involuntarily medicated, and those medications were currently in flux because the most effective medication caused blood platelet problems. Counsel said that defendant may have been diagnosed with schizophrenia when he was younger but counsel could not confirm that in the reports he had.

¶ 18        Counsel noted that defendant was diagnosed while in prison with bipolar disorder, post-traumatic stress disorder, impulse control disorder, antisocial personality disorder, and borderline personality disorders. Defendant had attempted to commit suicide at least twice while in prison and attempted suicide three or four times before he was in prison. However, counsel said, "Some of that though I don't know how accurate the number is simply because most of that seems to be self-reporting by [defendant]." Counsel explained that based upon his experience with defendant, "[T]he breadth with which he describes his issues from time to time will expand or

- 4 -

contract."

¶ 19     The State provided to the court a report created by Dr. Kelly Renzi, a clinical psychologist and director of mental health services at Pontiac Correctional Center. The State summarized the report, stating, "[Renzi] did indicate, while not as specific as [defense counsel], indicated that mental illness did contribute to behaviors; and then there's stuff regarding the enforced medication." The State continued, "So I think that's sufficient. The State wouldn't contest the finding of guilty but mentally ill and would agree that it's appropriate."

¶ 20     The trial court then took a recess so that defendant and defense counsel could speak about the plea agreement. When they went back on the record, defendant asked for another moment to ask counsel a question, which the court allowed. The court then told defendant, "So, as I understand the agreement, you are prepared today to plead guilty but mentally ill to the Class 2 felony offense of aggravated battery. In exchange for that plea, the State has agreed to a term of six years in the Illinois Department of Corrections." The court stated defendant would serve two years of mandatory supervised release. The court further explained, "The sentence will run consecutive to the sentences you are currently serving." The court also listed the fines and fees defendant would need to pay.

¶ 21     The trial court asked if defendant had any questions about the sentence or agreement, and defendant responded, "No," and "No, ma'am," to each. The court asked if that was defendant's understanding of the agreement. Defendant replied, "Yes, ma'am." The court explained the rights defendant was giving up by pleading guilty, and defendant said he had no questions about those rights. The court listed some collateral consequences of a conviction, including that "there may be registration requirements that restrict where you can live, work, or be present," to which defendant asked, "What do you mean register or something?" The court then

gave defendant an opportunity to speak with his counsel about that question. The court asked if defendant had any other questions, and he replied, "No, ma'am."

¶ 22　　　　The trial court asked whether anyone forced defendant to plead guilty, defendant replied, "No, ma'am." The court asked whether anyone promised him anything other than the agreement, defendant replied, "No, ma'am." The court asked whether he had enough time to talk with his attorney, defendant replied, "Yes, ma'am." The court asked whether he still wanted to plead guilty, defendant replied, "Yes, ma'am. Could I ask him another question, please?" The court allowed defendant time to ask counsel his question. Defendant then pled guilty.

¶ 23　　　　Immediately following the guilty plea, counsel told the trial court that defendant had asked him whether he could be transferred to Joliet Correctional Center, "pending his placement in a hospital," to which the court replied, "Okay. And thank you. And that, of course, is up to the Department of Corrections." The court then sentenced defendant pursuant to the agreement described above.

¶ 24　　　　　　　　　　C. Defendant's Motion to Withdraw Guilty Plea

¶ 25　　　　In September 2018, defendant *pro se* filed a motion to withdraw his guilty plea. In the motion, defendant claimed (1) his plea counsel was ineffective, (2) defendant was unfit at the time of his guilty plea, and (3) defendant did not understand the terms of the plea agreement when he pled guilty. Defendant contended that his counsel "never consulted with the expert witnesses employed by IDOC that were willing to testify on behalf of defendant, Dr. K Renzi, Dr. D. Marano, Dr. Sangster, and Dr. Washington." Defendant further claimed his counsel never visited him to discuss the charges or review the evidence. Defendant stated that he had been diagnosed as "Seriously Mentally Ill" and required residential treatment. At the time of the crime, he was in a manic state, and shortly thereafter, he attempted suicide. Defendant believed the combination of

his mental health problems and medications had made him unfit to assist in his defense or to enter a guilty plea. Finally, defendant asserted that he did not understand the terms of his plea because he believed he would be placed in a hospital and that no further time would be added to his prison sentence.

¶ 26 In October 2018, the trial court conducted a hearing at which the court asked defendant whether he wanted the public defender to assist him with his motion or whether he would prefer to proceed *pro se*. Defendant ultimately agreed to have the counsel that represented him during his plea also assist him with the motion to withdraw his guilty plea. After speaking with defendant, counsel said, "[Defendant] expressed the portions of the process and the day that he did not understand and what the ramification of that is." The court then continued the hearing to give counsel more time to confer with defendant.

¶ 27 In December 2018, the trial court conducted the continued hearing on defendant's motion. During the hearing, counsel provided to the court a certificate which stated that he performed the duties enumerated in Rule 604(d).

¶ 28 Counsel informed the trial court that he had spoken with defendant in November and also that morning. Defendant testified in support of his motion, stating that he did not understand when he pled guilty that he would have to spend more time in prison. He also testified that when he pled guilty, he thought he would be re-evaluated by the Department of Corrections regarding proper placement and treatment but was not re-evaluated.

¶ 29 The trial court noted that defendant's "motion alleges ineffective assistance of counsel in regards to consultations with Dr. Renzi. Is that something that [defendant] wishes to still go forward with, or I can kind of do a *Krankel* hearing in connection with that if that is an issue." Defendant replied, "[Counsel] said he had my mental health files himself." Defendant

continued, "And that he reviewed them himself and he said he didn't need to speak with him because he was able to review those, so—" The court asked, "So are you withdrawing your claim of ineffective assistance of counsel and just proceeding on the other issues?" Defendant replied, "Yes, ma'am. Now that that was clarified. Yes, ma'am."

¶ 30     Counsel said to the court that although he explained defendant's sentence to defendant, as he does with all his clients, defendant had consistently indicated that he did not know there would be time added to his sentence. Counsel also noted that he had told defendant that DOC was required to conduct a new evaluation upon his return to their custody, and that this evaluation could result in defendant's being transferred to a different correctional center or a state hospital. Defendant said, "IDOC has done nothing, ma'am." The court replied, "Well, I am sorry. I don't mean with regards to what IDOC has done. I mean with regards to what [counsel] may have advised you or what understood [*sic*] at the time of the plea was entered."

¶ 31     Following the State's argument, the trial court said that it remembered asking defendant if he understood the agreement. The court said that it believed it had "very clearly spelled out for him" the length of the sentence and that it would lengthen the time he would have to spend in prison. The court believed it had "very clearly admonished" defendant and noted the evidence suggesting otherwise was only "defendant's own testimony, which I think is fairly self-serving at this point[.]" The court denied the motion.

¶ 32     This appeal followed.

¶ 33                              II. ANALYSIS

¶ 34     Defendant appeals, arguing that (1) the trial court abused its discretion by denying his motion to withdraw guilty plea, (2) the trial court erred by denying defendant's request for new counsel to represent him on his motion to withdraw his guilty plea, and (3) counsel failed to comply

with Rule 604(d). We disagree and affirm the trial court's judgment.

¶ 35    A. The Trial Court Properly Denied Defendant's Motion to Withdraw His Plea

¶ 36    Defendant first argues that the trial court erred by denying his motion to withdraw his guilty plea because (1) he was unfit at the time of plea and (2) he did not understand the terms of the plea agreement. We disagree.

¶ 37    1. *The Law*

¶ 38    "To enter a voluntary plea of guilty, a defendant must understand the nature of the proceedings against him and be competent to assist in his own defense. [Citation.] The standard is the same whether a defendant is standing trial or pleading guilty." *People v. Shanklin*, 351 Ill. App. 3d 303, 306, 814 N.E.2d 139, 142-43 (2004). "A defendant is presumed to be fit to stand trial or to plead, and be sentenced. A defendant is unfit if, because of his mental or physical condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." 725 ILCS 5/104-10 (West 2018). "When a *bona fide* doubt of the defendant's fitness is raised, the court shall order a determination of the issue before proceeding further." *Id.* § 104-11.

¶ 39    "[A]lthough any party may raise the issue of a defendant's fitness to stand trial at an appropriate time, whenever a *bona fide* doubt of the defendant's fitness arises, the trial court must *sua sponte* order a determination of the defendant's fitness before proceeding further." *People v. Nichols*, 2012 IL App (4th) 110519, ¶ 31, 979 N.E.2d 1002. "Whether a *bona fide* doubt of the defendant's fitness exists is a matter within the trial court's discretion." *Id.* If no fitness hearing was held, a reviewing court will reverse a conviction "only where the trial court abused its discretion in failing to act on a *bona fide* doubt of the defendant's fitness." *Id.*

¶ 40    "Fitness concerns the defendant's functioning only in the context of trial and sentencing, such that [a] person can be fit for trial although his mind may be otherwise unsound."

(Internal quotation marks omitted.) *Id.* ¶ 32. " 'A *bona fide* doubt exists when the facts raise a real, substantial, and legitimate doubt regarding a defendant's mental capacity to meaningfully participate in his defense.' " *People v. Schnoor*, 2019 IL App (4th) 170571, ¶ 45, 145 N.E.3d 544 (quoting *People v. Westfall*, 2018 IL App (4th) 150997, ¶ 54, 115 N.E.3d 1148). " 'Relevant factors that the trial court may consider in assessing whether a *bona fide* doubt exists include (1) the defendant's behavior and demeanor, (2) prior medical opinions regarding the defendant's competence, and (3) defense counsel's representations about the defendant's competence.' " *Id.* (quoting *Westfall*, 2018 IL App (4th) 150997, ¶ 54). "A defendant's use of psychotropic medications may indicate unfitness but cannot alone override the presumption of fitness." *Nichols*, 2012 IL App (4th) 110519, ¶ 32.

¶ 41        "Generally, a trial court's decision to deny a motion to withdraw a guilty plea is reviewed for an abuse of discretion." *People v. Williams*, 2016 IL 118375, ¶ 14, 47 N.E.3d 976.

¶ 42                                        2. *This Case*

¶ 43        The motion to withdraw guilty plea stated that the motion should have been granted because (1) defendant was unfit at the time of his plea and (2) defendant was led to believe he would receive treatment for his mental illness and no further prison time as a result of his guilty plea.

¶ 44        The trial court never made a finding of a *bona fide* doubt as to defendant's fitness in the proceedings leading up to defendant's guilty plea. In his motion for a psychiatric evaluation, defense counsel did not claim that he believed defendant was unfit. In fact, the motion was to appoint a doctor to determine if a *bona fide* doubt existed, further highlighting the fact that no one, including counsel, had yet come to that conclusion. Recently, the Illinois Supreme Court stated that neither the filing of a motion seeking the appointment of a psychiatrist, nor the trial court's

granting of such a motion, amounts to a *bona fide* doubt concerning defendant's fitness. *People v. Brown*, 2020 IL 125203, ¶ 43. Additionally, following counsel's filing of that motion, no further action was taken, which amounts to abandonment of that motion. See *People v. Haywood*, 2016 IL App (1st) 133201, ¶ 25, 50 N.E.3d 1237. Here, counsel merely filed a motion on the issue and then abandoned that motion, making the question as to whether a *bona fide* doubt as to defendant's fitness existed in this case less of a close call than in *Brown*.

¶ 45       Although defendant, on appeal, explains that defendant had outbursts in court, we note that these outbursts were emotional outbursts of rage or frustration and not the sort of outbursts that would obviously lead an observer to believe defendant did not *understand* the proceedings. Importantly, following one of those outbursts, defendant apologized to the court at the next hearing and explained, "I wasn't taking my medication." A reasonable inference from this statement is that since the outburst, he began taking his medication again and had thereafter regained control of his emotions.

¶ 46       Defendant also lists numerous possible ways that defendant could have been impacted by his mental illnesses or by his medication, as well as the red flags of defendant's suicide attempts and other problems related to his mental health. However, the trial court had the opportunity to observe defendant in the courtroom and saw that after defendant's initial outburst, he began to function more appropriately. Moreover, the court was presented with all of this information and had the opportunity to consider it at the guilty plea hearing. Defendant responded to the court's questions appropriately and asked questions that helped demonstrate that he understood what the court was saying and what the proceedings entailed. Accordingly, we conclude that the trial court did not abuse its discretion by not *sua sponte* ordering a fitness hearing

prior to accepting defendant's plea.

¶ 47        Similarly, defendant's argument that his plea was not knowing or voluntary, and therefore his motion to withdraw guilty plea should have been granted, is meritless. For the reasons already mentioned, we conclude that there was no reason for the trial court to suspect that defendant was unable to understand the proceedings. Further, the court's admonitions to defendant—particularly in relation to the length of his sentence—were crystal clear. The court further asked appropriate follow up questions of defendant to ensure defendant understood the proceedings, and defendant's answers indicated he understood them. The court noted that his claim that he did not understand the agreement following his plea was self-serving, and the court was entitled to utilize its discretion to conclude that his motion to withdraw guilty plea should not be granted. We conclude that the trial court did not abuse its discretion by denying defendant's motion to withdraw his guilty plea.

¶ 48        B. The Trial Court Did Not Err by Not Appointing New Counsel for Defendant

¶ 49        Defendant next argues that (1) counsel had a conflict of interest with defendant and (2) the trial court failed to assess whether a potential conflict of interest existed.

¶ 50        Defendant argues that a conflict of interest existed when counsel (1) "convinced [defendant] that the challenge to [counsel's] effectiveness should be withdrawn," (2) "framed the issues so as to avoid review of [counsel's] failure to obtain a fitness evaluation or properly explain the plea terms," and (3) "directly contradicted [defendant's] claims (effectively testifying against [defendant]) at the motion hearing."

¶ 51        We conclude the record does not support the claim that counsel convinced defendant to withdraw his ineffective assistance of counsel claim. Counsel did not ask defendant if he wanted to withdraw that claim; instead, the trial court inquired by saying, "The only issue or

question I have at this point [defense counsel,] is part of the motion alleges ineffective assistance of counsel in regards to consultations with Dr. Renzi. Is that something that [defendant] wishes to still go forward with, or I can kind of do a *Krankel* hearing in connection with that if that is an issue." See *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984). Defendant replied, "[Counsel] said he had my mental health files himself." Defendant continued, "And that he reviewed them himself and he said he didn't need to speak with him because he was able to review those, so—." The court interjected, "So are you withdrawing your claim of ineffective assistance of counsel and just proceeding on the other issues?" Defendant replied, "Yes, ma'am. Now that that was clarified. Yes, ma'am." Obviously, counsel took no part in this discussion between the trial court and defendant; accordingly, no conflict of interest could have existed in relation to this decision.

¶ 52     Because no ineffective assistance of counsel claim remained, counsel was perfectly capable of assisting defendant with his remaining claims without a conflict of interest. Defendant's claims on appeal regarding how counsel "framed the issues" and "contradicted [defendant's] claims" are better understood as issues related to the effectiveness of counsel. Although defendant now casts aspersions as to the motivation behind counsel's arguing defendant's claims in the manner that he did, this court concludes that the content of counsel's argument was a matter of strategy. See *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

¶ 53     Further, the trial court did not err by not conducting a *Krankel* or similar inquiry regarding defendant's ineffective assistance of counsel claim or any potential conflict of interest. The court told defendant that it was prepared to conduct such an inquiry, but defendant chose of his own free will to withdraw the ineffective assistance of counsel claim. The court cannot and

should not force defendant to proceed with a claim he has chosen to abandon.

¶ 54                    C. Trial Counsel Did Not Fail to Comply With Rule 604(d)

¶ 55        Defendant next argues counsel failed to comply with Rule 604(d) because the record refutes counsel's certificate. We disagree.

¶ 56                              1. *The Law*

¶ 57        We review counsel's compliance with Rule 604(d) *de novo*. *People v. Grice*, 371 Ill. App. 3d 813, 815, 867 N.E.2d 1143, 1145 (2007). Rule 604(d) sets forth the procedures to be followed when a defendant who entered a guilty plea subsequently moves to reconsider his sentence or to withdraw his guilty plea. *Id.* The rule provides, in relevant part:

> "The motion shall be in writing and shall state the grounds therefor. When the motion is based on facts that do not appear of record it shall be supported by affidavit ***. *** The trial court shall then determine whether the defendant is represented by counsel, and if the defendant is indigent and desires counsel, the trial court shall appoint counsel.

> *** The defendant's attorney shall file with the trial court a certificate stating that the attorney has consulted with the defendant either by phone, mail, electronic means or in person to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings.

> *** Upon appeal any issue not raised by the defendant in the motion to reconsider the sentence or withdraw the plea of guilty and vacate the judgment shall

- 14 -

be deemed waived." Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

¶ 58        "It is well established that the attorney's certificate must strictly comply with the requirements of Rule 604(d)." *People v. Calleros*, 2018 IL App (2d) 151256, ¶ 3, 127 N.E.3d 75. If the certificate does not comply with Rule 604(d), the reviewing court must "remand to the circuit court for the filing of a new motion to withdraw guilty plea *** and a new hearing on the motion." *People v. Janes*, 158 Ill. 2d 27, 33, 630 N.E.2d 790, 792 (1994). However, "even when the certificate is valid on its face, a remand will be necessary if the record refutes the certificate." *People v. Winston*, 2020 IL App (2d) 180289, ¶ 14, 155 N.E.3d 1125.

¶ 59                                     2. *This Case*

¶ 60        As an initial matter, we note that because counsel did file a certificate in compliance with Rule 604(d), the question is whether the record refutes what is contained in that certificate. *Id.* Defendant argues that counsel's certification that he had made "any amendments to the motion necessary for the adequate presentation of any defects in those proceedings" is undermined by the record because counsel failed to (1) attach affidavits to support defendant's claims, (2) contact defendant's proposed expert witnesses, or (3) request an evaluation of defendant's fitness to stand trial.

¶ 61        Counsel was not obligated to contact defendant's expert witnesses or to obtain affidavits from them because defendant withdrew his allegation of ineffective assistance of counsel regarding counsel's alleged failure to speak with the experts. Because the claim was withdrawn, further evidence to support that claim would be unnecessary.

¶ 62        Counsel also was not obligated to request a fitness hearing for the same reason we previously described—no *bona fide* doubt existed as to defendant's fitness at the time of his plea. Instead, the question is whether the record refutes counsel's certification that he "made any

amendments to the motion necessary for adequate presentation of any defects in those proceedings." Despite the numerous suggestions defendant expresses on appeal regarding how counsel could have improved his representation of defendant on his motion, we conclude that nothing in the record refutes counsel's Rule 604(d) certification. Rule 604(d) requires adequate presentation, and the motion along with defendant's testimony at the hearing fulfilled that requirement.

¶ 63                                    III. CONCLUSION

¶ 64            For the foregoing reasons, we affirm the trial court's judgment.

¶ 65            Affirmed.