NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 200270-U

NO. 4-20-0270

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 18, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| JOSEPH EILTS, | ) | No. 17CF24 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

_____

JUSTICE STEIGMANN delivered the judgment of the court.
Justices DeArmond and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The appellate court affirmed the trial court's summary dismissal of defendant's
first stage postconviction petition because it was frivolous and patently without
merit.

¶ 2         In April 2017, defendant, Joseph Eilts, pleaded guilty to one count of predatory

criminal sexual assault (720 ILCS 5/11-1.40 (West 2016)) (requiring "a term of imprisonment of

not less than 6 years and not more than 60 years"), a Class X felony, and the trial court sentenced

him, pursuant to a plea agreement, to 35 years in prison. In July 2017, defendant filed a motion

to withdraw his guilty plea, which the court denied. In March 2020, defendant *pro se* filed a

postconviction petition alleging ineffective assistance of counsel based upon his trial counsel's

failure to request a fitness hearing. In June 2020, the trial court summarily dismissed that petition

as frivolous and patently without merit.

¶ 3         Defendant appeals, arguing the trial court erred by dismissing his postconviction

petition at the first stage because it stated the gist of a constitutional claim that he was denied effective assistance of counsel when counsel failed to request a fitness hearing or alert the court to defendant's mental impairments. We disagree and affirm the trial court's dismissal.

¶ 4                                          I. BACKGROUND

¶ 5        In January 2017, the State charged defendant with two counts of predatory criminal sexual assault (720 ILCS 5/11-1.40(a)(1) (West 2016)), alleging he committed acts of sexual penetration (count I) and sexual contact (count II) with his nephew, D.G., who was under 13 years old.

¶ 6        Later that month, defendant was arrested on those charges and appeared in court for a bond hearing. At that hearing, the trial court asked defendant a series of questions about his domicile, employment, and income. Defendant appropriately answered the court's questions, and the court granted his request for court-appointed counsel. Subsequently, the court set defendant's bond, ordered him to not have any contact with any minor under 18 as a condition of that bond, and asked him if he had any questions. Defendant replied, "I don't know exactly—Just it's so fast. I don't know what's going on." The trial court then reminded defendant that it had appointed a lawyer to represent him and he "could talk to the lawyer about it."

¶ 7        In February 2017, the defendant appeared with counsel for a preliminary hearing. The court found probable cause and arraigned defendant on the charges of predatory criminal sexual assault. After explaining the possible penalties, the court asked defendant if he understood. Defendant answered, "I think so." Again, the court told defendant that his attorney would explain the penalties further. Defendant then entered a plea of not guilty.

¶ 8        In April 2017, defendant appeared with counsel and entered a negotiated guilty plea. At the beginning of the hearing, the trial court recited the terms of the agreement, under

which defendant would plead guilty to count I for a sentence of 35 years in prison and the State would dismiss count II. Defendant affirmed that he understood the terms of the agreement and that he did not have any questions about the rights he would be giving up.

¶ 9　　　　Defendant also signed a written "waiver of trial and plea of guilty," which included a statement that he "ha[d] been apprised of the nature of the charge and of the minimum and maximum penalties available." The written plea agreement also included defendant's waiver of a presentence investigation and report. During the hearing, each time the trial court asked defendant whether he had any questions, he responded, "No, ma'am." Whenever the court asked if defendant understood, he affirmed, "Yes, ma'am." After the court found that defendant's guilty plea was knowing and voluntary, the court sentenced him to 35 years in prison.

¶ 10　　　　In July 2017, defendant *pro se* filed motions to withdraw his guilty plea and for leave to file the motion late. Defendant argued in his motion that his plea was "founded on coercion and manipulation by his attorney." Specifically, defendant claimed that his counsel misrepresented the true nature of the plea and that defendant was "under the belief through his counsel that the good time would allow his [*sic*] to be free in 10 years based on his participation in prison programs." Defendant also asserted that his attorney "did absolutely nothing to test the state's case" and coerced the defendant's plea "because of his unpreparedness." The trial court denied both motions.

¶ 11　　　　In March 2020, defendant *pro se* filed the postconviction petition at issue in this appeal. Defendant alleged that his lawyer was ineffective for allowing defendant to plead guilty without his understanding the consequences of the guilty plea, even though counsel knew that defendant (1) was mentally impaired, (2) suffered from Graves' disease (allegedly resulting in a plethora of symptoms), (3) had "hyperthyroidism-hypothyroidism" (defendant was unclear

regarding whether he had both diseases or only hyperthyroidism), (4) was an alcoholic, (5) suffered a stroke in 2013, (6) had a fear of authority, (7) had the "emotional and social personality of a 9 or 10 year old child, which is obvious in his character and demeanor," (8) was "slow or intellectually disabled," (9) had attention-deficit hyperactivity disorder, (10) had a history of being sexually abused, and (11) was taking "Levothyroxine" (a thyroid medication) when first incarcerated in jail.

¶ 12       Defendant argued that his attorney should have alerted the trial court to his medical conditions or otherwise let him present evidence of his conditions to the court. According to defendant, "any plea understanding" on his part required some "mental evaluation."

¶ 13       In support of his petition, defendant attached (1) affidavits from himself, his cellmate, and another inmate; (2) medical articles discussing the effect of thyroid dysfunction and criminality; and (3) laboratory analysis of defendant's blood from April 2017. The affidavits averred that defendant was "slow" and would easily submit to authority. Defendant claimed the lab analysis indicated a thyroid disorder.

¶ 14       In June 2020, the trial court summarily dismissed defendant's postconviction petition. In its order, the court wrote that the evidence suggested the State had a "strong case" against defendant. As part of the State's case, it had a forensic interview of the minor victim in which he indicated his uncle (later identified as defendant) touched him many times, including his "pee pee," and that defendant put the victim's "pee pee" in his mouth. In addition, defendant had admitted during a recorded police interview that he had committed sexual acts with the victim. Defendant had also previously been convicted of a Class 2 felony for fondling the penis of a minor.

¶ 15    The court found that the statements regarding defendant's mental acuity were conclusory because they lacked "any specific diagnosis, when such diagnosis was made and by whom, what medications he was taking for that diagnosis, if any, and how those medications affected his ability to knowingly and voluntarily enter the plea." Regarding whether defendant's character and demeanor clearly demonstrated some intellectual disability, the court found that the "record does not reflect any such obvious physical characteristics. If such physical traits or symptoms existed, the court would have noted that on the record/or inquired further as is the court's practice." The court also noted that defendant's trial attorney "often raised fitness issues in this court when they arose in other cases." Accordingly, the trial court found that defendant's petition failed to state the gist of a constitutional claim and dismissed the petition.

¶ 16    This appeal followed.

¶ 17    II. ANALYSIS

¶ 18    Defendant appeals, arguing the trial court erred by summarily dismissing his first-stage postconviction petition because it stated the gist of a constitutional claim that he was arguably denied effective assistance of counsel when counsel failed to request a fitness hearing or alert the court to defendant's mental impairments. We disagree and affirm the trial court's dismissal.

¶ 19    A. The Applicable Law

¶ 20    1. *Summary Dismissal of a First Stage Postconviction Petition*

¶ 21    The Post-Conviction Hearing Act provides criminal defendants with a three-stage process to collaterally attack their convictions or sentences on grounds of constitutional violations. *People v. Allen*, 2015 IL 113135, ¶ 20, 32 N.E.3d 615. The trial court shall summarily dismiss first-stage postconviction petitions within 90 days of filing if the court finds it "frivolous

or patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2020). At the first stage, "the court considers the petition's substantive virtue rather than its procedural compliance." *People v. Hommerson*, 2014 IL 115638, ¶ 11, 4 N.E.3d 58. "[T]he threshold for a petition to survive the first stage of review is low." *Allen*, 2015 IL 113135, ¶ 24.

¶ 22   Summary dismissal is appropriate only if the petition has no arguable basis in law or fact because it relies on (1) fanciful factual allegations or (2) an indisputably meritless legal theory. *Id.* ¶ 25. "Meritless legal theories include ones completely contradicted by the record, while fanciful factual allegations may be 'fantastic or delusional.' " *Id.* (quoting *People v. Hodges*, 234 Ill. 2d 1, 17, 912 N.E.2d 1204, 1212 (2009)). Unless positively rebutted by the record, courts must take well-pled factual allegations in a petition and any supporting evidence as true. *People v. Sanders*, 2016 IL 118123, ¶ 48, 47 N.E.3d 237.

¶ 23   Appellate courts review *de novo* a trial court's summary dismissal of a first-stage postconviction petition. *Allen*, 2015 IL 113135, ¶ 15.

¶ 24   2. *Ineffective Assistance of Counsel*

¶ 25   To state a claim of ineffective assistance of counsel in first-stage postconviction proceedings, defendant must allege that (1) counsel's performance arguably fell below an objective standard of reasonableness and (2) counsel's deficient performance arguably prejudiced defendant. *Hodges*, 234 Ill. 2d at 17 (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)).

¶ 26   B. This Case

¶ 27   Defendant primarily argues that the facts of his case are analogous to those in *People v. Brown*, 236 Ill. 2d 175, 923 N.E.2d 748 (2010), in which the Illinois Supreme Court reversed a trial court's summary dismissal of a postconviction petition alleging ineffective

assistance of counsel for failure to request a fitness hearing.

¶ 28    In *Brown*, the defendant was convicted of attempted first degree murder of a peace officer for lunging at the officer with a knife. *Id.* at 180. During the sentencing hearing, the defendant stated that he was depressed, had previously attempted suicide multiple times, and that he only lunged at the officer because he wanted the police to kill him. *Id.* He then filed a postconviction petition alleging ineffective assistance of counsel for failing to request a fitness hearing. *Id.* at 181. The defendant wrote in his petition that he had informed trial counsel that he (1) was taking psychotropic medication before and after his arrest, (2) was taking the medication for his bipolar disorder, and (3) had previously attempted suicide. *Id.* He further alleged that his offense was an attempt at "suicide by police" and that the "very heavy" psychotropic medication he was taking during trial caused him to lack an understanding of what was happening. *Id.*

¶ 29    In support of the defendant's petition in *Brown*, the defendant attached (1) medical records documenting his bipolar disorder diagnosis and his prescribed medications used to treat the condition and (2) affidavits from his mother and aunt in which they alleged that the defendant's counsel was informed of the defendant's bipolar diagnosis, the medications he was taking, and his previous suicide attempts. *Id.*

¶ 30    Because of the defendant's allegations in *Brown* and corroborating evidence thereof—namely, his use of psychotropic medications, his suicide attempts, and lack of understanding of the proceedings, as well as the attached medical records and affidavits—the supreme court held that the defendant's petition set forth an arguable basis in fact for his claim of ineffective assistance of counsel. *Id.* at 185-86.

¶ 31    The case before this court is very different. Here, defendant argues that (1) he did not understand his guilty plea because he was "slow" and "suffering from a disability" that

should have been apparent to his trial counsel and (2) his host of maladies, of which his counsel was aware, were sufficient to call his fitness to stand trial into question. In his petition, defendant merely alleged that he is visibly "slow" and "intellectually disabled." He did not provide any detail—explicit or implicit—as to how his unquantified mental limitations, in any way, interfered with his ability to understand the proceedings. The fact that defendant suffers from limited intellectual ability or other mental impairments does not necessarily render him unfit to stand trial. *People v. Shanklin*, 351 Ill. App. 3d 303, 306, 814 N.E.2d 139, 143 (2004) (citing *People v. Johnson*, 183 Ill. 2d 176, 194, 700 N.E.2d 996, 1005 (1998)); *People v. Easley*, 192 Ill. 2d 307, 322-23, 736 N.E.2d 975, 987-88 (2000).

¶ 32        The same problems are present regarding defendant's allegations of thyroid dysfunction. Defendant alleged that he has been diagnosed with Graves' disease and listed common symptoms of that disease. However, defendant does not allege what symptoms of this disease he experienced during his trial proceedings nor how they affected his ability to understand and participate in the proceedings.

¶ 33        Unlike in *Brown*, defendant's allegations and affidavits here do not provide a factual basis for his claims. The record shows defendant repeatedly acknowledged to the trial court that he understood the charges against him, the rights he was waiving by pleading guilty, the potential sentencing range for the charged offense, and his rights on appeal. For instance, at arraignment he was easily able to provide the court with information regarding his name, address, employment status, and ability to afford counsel. As for defendant's allegation that his "demeanor and character, and visual make up of that demeanor [are] not unlike individuals with [D]own [S]yndrome shows [him] to be slow and in fact suffering from a disability," the trial court wrote in its order rejecting defendant's postconviction petition that nothing about defendant

appeared to the court to be out of the ordinary because the court would have noted it on the record.

¶ 34        In *Brown*, the defendant attached medical records documenting his bipolar disorder and the psychotropic medications he was taking that he alleged prevented him from understanding the proceedings. *Brown*, 236 Ill. 2d at 181-82. Here, defendant did not include (1) medical records regarding either his alleged Graves' disease or his mental acuity, (2) allegations that he had informed trial counsel of his being "slow" and being unable to understand the proceedings, nor (3) allegations that he took medication that prevented him from understanding the proceedings.

¶ 35        In *Brown,* the defendant provided corroborating affidavits from his family members which detailed his mental health struggles, prior suicide attempts, and medications. They also averred that defendant had informed his counsel of his mental impairments. *Id.*

¶ 36        Here, defendant provided no such corroborating affidavits. Instead, defendant attached affidavits from himself and other prisoners that merely alleged "it was obvious" defendant was "intellectually disabled" and that defendant had Graves' disease. These affidavits, like the petition, failed to state whether defendant was affected at the time of his guilty plea by the myriad of symptoms the affiants claimed defendant showed. As the trial court put it, defendant's affidavits are "devoid of any specific factual allegation to support" his claims, and we agree.

¶ 37        We also note that two of defendant's affidavits were from inmates who had met defendant only after he entered his plea, and defendant's own affidavit merely paraphrased the conclusory allegations from his petition. Instead, defendant should have attached (1) affidavits from friends or family regarding his supposed mental deficiencies, or (2) affidavits from doctors

regarding his symptoms, or (3) better yet, both kinds of affidavits. In their absence, defendant should have explained in his petition why supporting documents were absent. See 725 ILCS 5/122-2 (West 2020).

¶ 38 Affidavits accompanying "a petition must identify with reasonable certainty the sources, character, and availability of the alleged evidence supporting the petition's allegations." *People v. Delton*, 227 Ill. 2d 247, 254, 882 N.E.2d 516, 520 (2008). Defendant's affidavits do not meet this standard.

¶ 39 Although we recognize that defendant *pro se* filed his petition, being a *pro se* litigant does not excuse defendant from providing a "sufficient factual basis to show the allegations in the petition are 'capable of objective or independent corroboration.' " *Allen*, 2015 IL 113135, ¶ 24 (quoting *People v. Collins*, 202 Ill. 2d 59, 67, 782 N.E.2d 195, 199 (2002)).

¶ 40 Nothing before us indicates that defendant's understanding of the proceedings, at the time of the plea hearing, was hindered by (1) a severe cognitive impairment or (2) any physical illness, prescribed medication, or symptom thereof. Even considering defendant's allegations under the liberal construction standard set forth in *Brown*, defendant has failed to state the gist of a constitutional claim of ineffective assistance of plea counsel. See *Brown*, 236 Ill. 2d at 188.

¶ 41 Accordingly, we conclude that the trial court properly found defendant's petition frivolous and patently without merit.

¶ 42                                III. CONCLUSION

¶ 43 For the reasons stated, we affirm the trial court's judgment.

¶ 44 Affirmed.